UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

PM 3:59

Keith Drew

Write the full name of each plaintiff.

18 CV 10557

No. ______________
(To be filled out by Clerk's Office)

-against-

SEE Attached

Write the full name of each defendant. If you cannot fit the names of all of the defendants in the space provided, please write "see attached" in the space above and attach an additional sheet of paper with the full list of names. The names listed above must be identical to those contained in Section IV.

**COMPLAINT**
(Prisoner)

Do you want a jury trial?
☑ Yes ☐ No

**NOTICE**

The public can access electronic court files. For privacy and security reasons, papers filed with the court should therefore *not* contain: an individual's full social security number or full birth date; the full name of a person known to be a minor; or a complete financial account number. A filing may include *only*: the last four digits of a social security number; the year of an individual's birth; a minor's initials; and the last four digits of a financial account number. See Federal Rule of Civil Procedure 5.2.

## I. LEGAL BASIS FOR CLAIM

State below the federal legal basis for your claim, if known. This form is designed primarily for prisoners challenging the constitutionality of their conditions of confinement; those claims are often brought under 42 U.S.C. § 1983 (against state, county, or municipal defendants) or in a "*Bivens*" action (against federal defendants).

☒ Violation of my federal constitutional rights

☐ Other: ________________

## II. PLAINTIFF INFORMATION

Each plaintiff must provide the following information. Attach additional pages if necessary.

Keith | | Drew

First Name | Middle Initial | Last Name

State any other names (or different forms of your name) you have ever used, including any name you have used in previously filing a lawsuit.

349-18-04964

Prisoner ID # (if you have previously been in another agency's custody, please specify each agency and the ID number (such as your DIN or NYSID) under which you were held)

Anna M. Kross Center

Current Place of Detention

18-18 Hazen Street

Institutional Address

East Elmhurst | N.Y | 11370

County, City | State | Zip Code

## III. PRISONER STATUS

Indicate below whether you are a prisoner or other confined person:

☒ Pretrial detainee

☐ Civilly committed detainee

☐ Immigration detainee

☐ Convicted and sentenced prisoner

☐ Other: ________________

# Statement of Claim

City of New York
Commissioner James O'Neil, NYPD
Chief of Detective, Dermot Shea
Chief of Patrol, Rodney Harrison
Officer Wilfred Martinez, Shield #988
Alissa Wimmer, Asst. District Attorney

## V.   STATEMENT OF CLAIM

Place(s) of occurrence: 42nd Street, 7th Avenue

Date(s) of occurrence: June 30, 2018

**FACTS:**

State here briefly the FACTS that support your case. Describe what happened, how you were harmed, and how each defendant was personally involved in the alleged wrongful actions. Attach additional pages as necessary.

SEE Attached

# Statement of Claim

1) This Federal Question action is for all relevant remedies for denial of rights, privileges, or immunities provided for in the United States Constitution, and Article 1, section 12, of the New York State Constitution.

2) On June 30, 2018, at 42nd Street, and 7th Ave. New York, N.Y, without any warrant, or other legal process, and without any legal right, defendant Police Officer Wilfred Martinez #988, unlawfully and maliciously arrested this Plaintiff, restrained him, and took him in custody to the police station in the City of New York, and charged him with the crime of Unauthorized Sale of Certain Transportation Services, requesting that he be held in custody.

3) While under arrest and deprived of his personal liberty interests, and while in the police station, Plaintiff was informed that the charge of Unauthorized Sale would be reduced to Attempted Unauthorized Sale by defendant P.O. Martinez #988; clearly recorded on Body Cam Audio at 6:45 P.M., June 30, 2018.

# Statement of Claim

4) Having been arrested, Plaintiff was held in custody for six (6) hours in accordance with the usual practice on the arrest of criminals; at which time, he was taken, handcuffed, through the streets to Criminal Court, N.Y. County, at 100 Centre Street, where Plaintiff was arraigned on the Felony; Possession of Forged Instrument 2nd Degree.

5) Defendant, Assistant District Attorney Alissa Wimmer, failed in her duty to provide Equal Protection of the Law, and entered into a conspiracy with defendant Martinez to protect him from False Arrest allegations; by refusing to bring Misdemeanor Unauthorized Sale of Certain Transportation Service charges upon this Plaintiff.

6) This Misdemeanor arrest; 165.16 of the N.Y Penal Law; Unauthorized Sale of Certain Transportation Service, has been utilized by both defendant P.O. Martinez, and defendant A.D.A. Wimmer as the sole basis for this current prosecution.

SEE: Exhibit 1

# Statement of Claim

7) Body Camera Audio of defendant Martinez captures the initial mention of this charge, Penal Law 165.16; which was used to justify the stop, and the seizure; in addition to, the search of this Plaintiff.

8) Defendant Wimmer also accepted the use of Penal Law 165.16 as the pretext to conduct an illegal search; however, in order to avoid an examination of the substantive predicates that lead to the arrest; a decision was made not to charge for a misdemeanor at all.

9) The proper analysis in search and seizure cases is to examine the predicate for the police action and then determine whether or not that predicate justified the extent of the official intrusion on the individual — SEE: People v. Moore 60 A.D. 2d. 477 (1977)

10) Constitutional requirement that probable cause must exist for a search applies to all searches. People v. Cadby 62 A.D. 2d. 52 (1978).

# Statement of Claim

11) New York Penal Law 165.16 became effective July 11, 2005, and reads as follows:

This act shall take effect on the ninetieth day after it shall have become law provided, however, that Metropolitan Transportation Authority, New York city Transit Authority, and any affiliate selling farecards shall Promulgate and Publish rules and regulations, which may be amended from time to time, providing ADDITIONAL PUBLIC NOTICE of the Manner of Sales that are Prohibited by this Act - SEE Exhibit 2

12) Section 2 is an equal part of this legislation and grants this Plaintiff full and complete authorization to sell value-based farecards under the specific exception therein; and no contrary allegation has been or even can be made by these defendants.

13) The failure to charge Penal Law 165.16 (1) is consistent with Plaintiff's contention of fabricated false arrest as sole basis for search.

# Statement of Claim

14) There was never any basis for a stop, or an arrest, presented to the Court, that was sufficient to implicate this Plaintiff in the commission of any criminal offense, prior to the unlawful and unconstitutional search of his person. As a result, any alleged contraband is tainted fruit of this unwarranted government intrusion.

15) As noted above, the Legislature created a Liberty interest in Laws 2005, ch 57, section 2, (Part T), which mandated that Additional Public Notice of the Manner of Sales that are Prohibited by this act shall be Promulgated and Published.

16) Metropolitan Transportation Authority, and New York City Transit Authority failed to follow these Legislative Mandates; thus stripping Penal Law 165.16 of any statutory authority, which calls into question any reliance on this Penal Code for subsequent search authorizations.

# Statement of Claim

17) Plaintiff is clear in the contention that, as a result of; Penal Law 165.16, section 2, this entire statute is constitutionally vague and inadequate, or in the other alternative this Plaintiff is under legislative authority to sell Value-Based Farecards under P.L. 165.16, section 2, Prosecution Exception.

18) In either the first or the second instance no probable cause would exist to initiate a Stop and/or Frisk, or a search of this Plaintiff, in total reliance on this specific misdemeanor statute, which is exactly what has occurred in this Cause of Action.

19) Body Camera Audio of defendant, P.O. Martinez will show that Penal Law 165.16, section 1 is the pretextual allegation that was presented to this Plaintiff on June 30, 2018, as the sole reason for his arrest and the initial search.

# Statement of Claim

20) No Body Camera Audio or any other evidence has been introduced to justify the legality and constitutionality of the Stop and Frisk of this Plaintiff.

21) Plaintiff has a Due Process right not to be deprived of liberty on the basis of false evidence fabricated by the government. SEE: Victory v. Pataki, 814 F.3d 47 (2d Cir. 2016)

22) In light of all the allegations that have been presented to the Court thus far; defendant Police Officer Martinez is just as likely to have manipulated and forged the MetroCards in question as this Plaintiff;

23) No evidence has ever been presented that signifies an observation of this Plaintiff in the act of any criminal offense on June 30, 2018.

# Statement of Claim

24) The arrest of this Plaintiff on June 30, 2018, violated the individual right to be free from governmental surveillance and monitoring directly protected by the Fourth Amendment Whalen v. Roe 429 U.S. 589, 97 S. Ct. 869

25) Transit Police Recidivist Database has been thoroughly abused in this matter to monitor and unlawfully harass this Plaintiff with no legitimate objective.

26) Plaintiff's personal injuries were a direct and proximate result of his inclusion in this Database which is blatantly biased and race-specific to the point of violating the Thirteenth Amendment of the United States Constitution.

27) Plaintiff's inclusion on this Database was without notice or opportunity to be heard and Plaintiff hereby requests Judicial Notice of this Formal demand to be removed from this Database.

# Statement of Claim

28) June 13, 2018, defendant, Chief of Detectives, Dermot Shea, and Chief of Patrol, Rodney Harrison, testified under oath to the New York City Council that ninety-nine percent of people in NYPD databases are people of color. (Exhibit 3)

29) All named defendants, have violated Plaintiff's Equal Protection Rights by entering his name on said Transit Database; in the first instance, and encouraging and condoning the actions of officer Martinez, by providing financial incentives for arrest quotas, in an effort, to motivate unconstitutional practices.

30) Plaintiff's arrest on June 30, 2018, was in complete violation of the Fourth Amendment in light of the fact, that the arrest occurred outside of Transit Authority property without reasonable suspicion or probable cause.

# Statement of Claim

31) Courts retain the traditional responsibility to guard against police conduct which is harassing, or which trenches upon personal security without the objective evidentiary justification which the Federal Constitution requires; where such conduct is identified, it must be condemned by the judiciary, and its fruits must be excluded from evidence in criminal trials.

32) No right is held more sacred, or is more carefully guarded by the common law than the right of every individual to the possession and control of his own person, free from all restraint or interference, unless by clear and unquestionable authority of law.

33) Plaintiff brings into question the actions of the government in this specific instance to justify the clear and obvious racial disparity used to label citizens of a specific class as either a criminal or a threatening element.

# Statement of Claim

34) In addition to the public statements mentioned herein; the Class Action Floyd Litigation shed light on the racist mindset and ideology in 2013 right in this very Court, providing more than ample amounts of notification of these unconstitutional NYPD abuses.

35) Municipal liability is clear on Equal Protection grounds through the statistical support in the public record.

36) The wording of the Thirteenth Amendment creates a federally protected liberty interest of those citizens who have been targeted by government by the use of stigmatizing labels directed at a distinct and recognizable racial class in the effort to stimulate the economy through slave-like punitive sanctions.

# Statement of Claim

37) City of New York fails to adequately train and supervise those members of New York Police Dept. who are placed in official policy-making roles; leaving ample room for major discretionary abuses conducted by those very ones entrusted with the total operation of the department.

38) Commissioner O'Neil has tolerated, encouraged, and condoned all racially discriminatory actions described herein; to the detriment of this Plaintiff.

39) Asst. District Attorney Wimmer, and P.O. Martinez #988, have entered into an invidious discriminatory conspiracy in total reliance on officer Martinez personal objectives.

40) Case law has established that a conspiracy can occur without explicit agreement by the parties to engage in one.

# Statement of Claim

41) An impartial and honest fact-finder will be hard-pressed to conclude any crime committed by Plaintiff that justifies several years in the prison system.

42) However, this same fact-finder will easily recognize the overt machinations of the named defendants to unjustly attack and antagonize this Plaintiff in the interest of professional acclaim and/or financial overtime gains.

43) In Matter of Darryl C., a 2012, Appellate Division, First Dept. case, discussed the four (4) levels of permissible police interference provided by New York Court of Appeals; (1) The Minimal Intrusion of Approach, (2) The Common-Law Right to Inquire, (3) Forcible Stop and Detention (4) The Right to Arrest. The third and fourth level are statutorily described in CPL 140.50 (3) and CPL 140.10

# Statement of Claim

44) This Instant Matter was initiated by defendant, Officer Martinez at the second, Right to Inquire level, but quickly proceeded to the fourth, Right to Arrest level, based solely on Plaintiff's inclusion in this Transit Database.

45) Officer Martinez completely overlooked and disregarded the standards of Criminal Procedure Law 140.10 which clearly mandates an arrest only when there is probable cause to believe that an offense has been committed in his presence. There has never been nor, can there ever be any allegation presented to any Court that suggests this plaintiff was engaged in criminal activity at the moment of arrest on June 30, 2018.

46) For current and future police harassment, this Database is an ideal component, and is, in reality, the only conceivable rationale, absent another plausible justification.

# Statement of Claim

47) Chief of Patrol, Rodney Harrison, equipped with actual, and constructive knowledge of the composition of NYPD Databases, tolerates condones, and encourages defendant Officer Martinez to violate the rights of citizens included in these Databases, while cloaked in Plainclothes uniform, including, but, in no way limited to this Plaintiff on June 30, 2018.

48) The facts of this case demonstrate that on June 30, 2018, Plaintiff was never accosted by any Transit Officer in full uniform in the Times Square area, but only by one Plainclothes Officer Martinez with specific machinations to supplant his upcoming retirement pension with a felony arrest overtime incentive.

# Statement of Claim

49) Plaintiff is fully entitled to Equal Protection from intentional discrimination, whether occasioned by express terms of a statute or by its improper execution through duly constituted agents.

50) Plaintiff challenges any and all conceivable state of facts that defendants present to provide rationale for this disparity of treatment.

51) Discrimination itself, by stigmatizing members of any disfavored group as innately inferior and therefore as less worthy participants in the political community, can cause serious noneconomic injuries to those persons who are personally denied equal treatment solely because of their membership in said disfavored group. (Heckller v. Matthews, 465 U.S. 728)

# Statement of Claim

52) The fundamental concern of discrimination law is to redress the dignitary affront that decisions based on group characteristics represent.

53) Penal law 165.16 is Constitutionally infirm and much too vague which allows for broad discretionary abuse when combined with Transit Police Databases which lack official criteria utilized to include this Plaintiff, resulting in enhanced and unwarranted scrutiny and harassment.

54) Any and all criminal offenses where Plaintiff was duly adjudicated guilty have been fully atoned for as a Matter of Law, thus eliminating any adequate rationale for the N.Y.P.D to include this Plaintiff in any type of surveillance or database.

# Statement of Claim

55.) Race - Specific surveillance and/or monitoring has no place in this Country's society and the specific databases at issue herein are just such components clearly established by the statisical evidence and prior orders and holdings of the Court.

56.) Plaintiff moves for Summary Judgment pursuant to Fed R. Civ. P., rule 56, and Default Judgment pursuant to New York Civil Practice Law and Rules, Article 3215.

57.) This claim is predicated upon 42 U.S.C. subsection 1983 and 1985 (3) for judicial redress of all substantiated injury.

# Statement of Claim

58) In light of recent findings in this District, as well as historically recorded discriminatory law enforcement policies directed toward Plaintiff's racial class; we can no longer take for granted that Police know how to conduct themselves in a truly professional manner.

59) 21 NYCRR § 1050.4 (c) in pertinent part provides that except for employees of the Authority (or expressly authorized agents of the Authority); no person shall sell any version of any fare media.

60) Penal Law 165.16 (2) plainly indicates legislative authority under a specific Prosecution Exception, which serves to implicate a Liberty Interest in this obvious contrast between the Penal Law and New York City Rule. (Exhibit 1)

# Statement of Claim

61) Plaintiff's quandary, involving this prosecution, as to the sufficiency of the States jurisdiction; in light of these two relevant statutes, is not academic. Public records of racially motivated N.Y.P.D. policies were presented in the Floyd litigation of 2013, and a lack of reasonable and probable cause for any stop and subsequent search that revealed a possession of questionable contraband; has also implicated class-based or racial animus on the part of P.O Martinez #988, individually, and the Transit Police Department, as a whole. (Exhibit 3)

62) This suspect Penal Law is the sole predicate for defendants to seize this Plaintiff and it is proper analysis to examine such predicate to determine whether official intrusion is justified. (People v. Stewart 41 N.Y. 2d 65) (1976)

**INJURIES:**

If you were injured as a result of these actions, describe your injuries and what medical treatment, if any, you required and received.

Defendants maliciously interfere with Plaintiff right of free association inflicting mental and emotional distress, irritability, nervousness, anxiety, sleep loss and other pecuniary harms. Plaintiff claims an Injury-in-Fact on all named defendants

## VI.   RELIEF

State briefly what money damages or other relief you want the court to order.

Actual and Punitive Damage upon all named defendants and the City of New York, individually and severally for constructive redress of all adequately substantiated causes of action.

## VII. PLAINTIFF'S CERTIFICATION AND WARNINGS

By signing below, I certify to the best of my knowledge, information, and belief that: (1) the complaint is not being presented for an improper purpose (such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation); (2) the claims are supported by existing law or by a nonfrivolous argument to change existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Federal Rule of Civil Procedure 11.

I understand that if I file three or more cases while I am a prisoner that are dismissed as frivolous, malicious, or for failure to state a claim, I may be denied *in forma pauperis* status in future cases.

I also understand that prisoners must exhaust administrative procedures before filing an action in federal court about prison conditions, 42 U.S.C. § 1997e(a), and that my case may be dismissed if I have not exhausted administrative remedies as required.

I agree to provide the Clerk's Office with any changes to my address. I understand that my failure to keep a current address on file with the Clerk's Office may result in the dismissal of my case.

Each Plaintiff must sign and date the complaint. Attach additional pages if necessary. If seeking to proceed without prepayment of fees, each plaintiff must also submit an IFP application.

10-9-18 — Dated

Keith Drew — Plaintiff's Signature

Keith — First Name

Middle Initial

Drew — Last Name

18-18 Hazen Street — Prison Address

East Elmhurst — County, City

N.Y — State

1137 — Zip Code

Date on which I am delivering this complaint to prison authorities for mailing: 10-10-18

EXHIBIT

1

It is illegal for a person who is not authorized by the NYCTA to sell access to its services to do so (*see*Penal Law § 165.16 [1]; 21 NYCRR 1050.4).
3

"A person is guilty of unauthorized sale of certain transportation services when, with intent to avoid payment by another person to the metropolitan transportation authority, New York city transit authority or a subsidiary or affiliate of either such authority of the lawful charge for transportation services on a railroad, subway, bus or mass transit service operated by either such authority or a subsidiary or affiliate thereof, he or she, in exchange for value, sells access to such transportation services to such person, without authorization, through the use of an unlimited farecard or doctored farecard. This section shall apply only to such sales that occur in a transportation facility, as such term is defined in subdivision two of section 240.00 of this chapter, operated by such metropolitan transportation authority, New York city transit authority or subsidiary or affiliate of such authority, when public notice of the prohibitions of its section and the exemptions thereto appears on the face of the farecard or is conspicuously posted in transportation facilities operated by such metropolitan transportation authority, New York city transit authority or such subsidiary or affiliate of such

**§ 165.16. Unauthorized sale of certain transportation services**

**1.** A person is guilty of unauthorized sale of certain transportation services when, with intent to avoid payment by another person to the metropolitan transportation authority, New York city transit authority or a subsidiary or affiliate of either such authority of the lawful charge for transportation services on a railroad, subway, bus or mass transit service operated by either such authority or a subsidiary or affiliate thereof, he or she, in exchange for value, sells access to such transportation services to such person, without authorization, through the use of an unlimited farecard or doctored farecard. This section shall apply only to such sales that occur in a transportation facility, as such term is defined in subdivision two of section 240.00 of this chapter, operated by such metropolitan transportation authority, New York city transit authority or subsidiary or affiliate of such authority, when public notice of the prohibitions of its section and the exemptions thereto appears on the face of the farecard or is conspicuously posted in transportation facilities operated by such metropolitan transportation authority, New York city transit authority or such subsidiary or affiliate of such authority.

**2.** It shall be a defense to a prosecution under this section that a person, firm, partnership, corporation, or association: (a) selling a farecard containing value, other than a doctored farecard, relinquished all rights and privileges thereto upon consummation of the sale; or (b) sold access to transportation services through the use of a farecard, other than a doctored farecard, when such sale was made at the request of the purchaser as an accommodation to the purchaser at a time when a farecard was not immediately available to the purchaser, provided, however, that the seller lawfully acquired the farecard and did not, by means of an unlawful act, contribute to the circumstances that caused the purchaser to make such request.

**3.** For purposes of this section:

**(a)** "farecard" means a value-based, magnetically encoded card containing stored monetary value from which a specified amount of value is deducted as payment of a fare;

**(b)** "unlimited farecard" means a farecard that is time-based, magnetically encoded and which permits entrance an unlimited number of times into facilities and conveyances for a specified period of time; and

**(c)** "doctored farecard" means a farecard that has been bent or manipulated or altered so as to facilitate a person's access to transportation services without paying the lawful charge.

EXHIBIT
2

**Editor's Notes:**

**Laws 2005, ch 57, § 2 (Part T), eff July 11, 2005, provides as follows: § 2. This act shall take effect on the ninetieth day after it shall have become a law provided, however, that the metropolitan transportation authority, New York city transit authority and any subsidiary or affiliate selling farecards, including but not limited to unlimited farecards, shall promulgate and publish rules and regulations, which may be amended from time to time, providing additional public notice of the manner of sales that are prohibited by this act, and of the exemptions to the prohibitions in this act, and such initial rules and regulations shall be promulgated and published on or before such effective date.**

**Notes to Decisions**

**As the modern-day equivalent of "slugs," the illegal use of altered MetroCards remains eligible for prosecution as a forgery despite the enactment of N.Y. Penal Law § 165.16. People v Mattocks, 12 N.Y.3d 326, 880 N.Y.S.2d 888, 908 N.E.2d 878, 2009 N.Y. LEXIS 763 (N.Y. 2009).**

**Research References and Practice Aids**

**Jurisprudences:**

**35A N.Y. Jur 2d Criminal Law Substantive Principles and Offenses § 896.**

**35B N.Y. Jur 2d Criminal Law Substantive Principles and Offenses §§ 1070, 1071.**

EXHIBIT

3

**Special Alert**

In a dissenting opinion in 2011, Chief Judge Lippman of the New York Court of Appeals expressed his view about the manner in which stop and frisks are employed New York City:

> [t]his is not an exaggerated or purely academic concern in a jurisdiction where, as is now a matter of public record, hundreds of thousands of pedestrian stops are performed annually by the police, only a very small percentage of which actually result in the discovery of evidence of crime. 1

Judge Lippman embedded in his comment a reference to a civil lawsuit pending before District Court Judge Shira Scheindlin of the Southern District of New York, *Floyd v. City of New York*. In his footnote, Judge Lippman pointed out that the *Floyd* litigation had produced information establishing that by 2011, there were almost 600,000 street stops by the NYPD on an annual basis.

As of the date of this alert, there is an appeal pending of Judge Scheindlin's rulings issued on August 12, 2013 in *Floyd*. The remedies directed in *Floyd*, described below, have been stayed. Additionally, any further actions at the district court level in this case will be made by a different district court judge, because the Court of Appeals found that Judge Scheindlin made public statements that have brought into question her impartiality.

Judge Scheindlin actually issued two opinions in the case, one finding the City of New York liable in a federal class action lawsuit that alleged that the New York City Police Department had a policy of racially motivated unconstitutional stops and frisks and the second describing remedies for those constitutional violations. These determinations were made after a trial without a jury at which the judge was presented with significant evidence concerning years of police-citizen interactions that were conducted pursuant to the stop and frisk tactic. In her opinion, Judge Scheindlin was able to comment on 4.4 million stops made over the course of more than eight year between January 2004 and June 2012.

In this declaratory judgment action, Judge Scheindlin decided

issues of fact and law. The court made it clear that it had an overriding philosophy:

> [n]o one should live in fear of being stopped whenever he leaves his home to go about the activities of daily life. Those who are routinely subjected to stops are overwhelmingly people of color, and they are justifiably troubled to be singled out when many of them have done nothing to attract the unwanted attention.

The court was able to point to statistical support for her determination that the city was liable for violating constitutional rights of those stopped or stopped and frisked.

Among the statistics that were stated in the opinion were:

- 52% of all stops were followed by a protective frisk for weapons. A weapon was found after 1.5% of these frisks. In other words, in 98.5% of the 2.3 million frisks, no weapon was found.

- 8% of all stops led to a search into the stopped person's clothing, ostensibly based on the officer feeling an object during the frisk that he suspected to be a weapon, or immediately perceived to be contraband other than a weapon. In 9% of these searches, the felt object was in fact a weapon. 91% of the time, it was not.

- In 14% of these searches, the felt object was in fact contraband. 86% of the time it was not.

- 6% of all stops resulted in an arrest, and 6% resulted in a summons. The remaining 88% of the 4.4 million stops resulted in no further law enforcement action.

- In 52% of the 4.4 million stops, the person stopped was black, in 31% the person was Hispanic, and in 10% the person was white.

- In 2010, New York City's resident population was roughly 23% black, 29% Hispanic, and 33% white.

- In 23% of the stops of blacks, and 24% of the stops of Hispanics, the officer recorded using force. The number for whites was 17%.

- Weapons were seized in 1.0% of the stops of blacks, 1.1% of the stops of Hispanics, and 1.4% of the stops of whites.



NYPD director of legislative affairs Oleg Chernyavsky, Chief of Detectives Dermot Shea and Chief of Patrol Rodney Harrison testified at a City Council hearing on gang activity in June.

JEFFERSON SIEGEL/DAILY NEWS

# Ganging up for cop data

## Groups sue, claim NYPD blocks info

**EXCLUSIVE**

BY GRAHAM RAYMAN
NEW YORK DAILY NEWS

Two civil rights groups are suing the NYPD for blocking requests for documents showing how the department enters New Yorkers into its gang database.

The NAACP Legal Defense Fund and the Center for Constitutional Rights filed the action in Manhattan Supreme Court Tuesday after they were denied the written guidelines for the database. The NYPD claimed it could not find necessary records.

However, the lawsuit noted, Chief of Detectives Dermot Shea told the City Council under oath June 13 that the NYPD established policies and procedures for putting people in the database four years ago. Shea also said that 99% of those in the database are people of color.

"(In 2014) the NYPD realized it needed to establish procedures to regulate the circumstances under which a person's name would be entered into the database as well as criteria for removal," Shea testified.

Shea said a person's name can be entered in the database if two reliable sources identify them as being gang-affiliated. It can be someone who spends time at a "known gang location," has "gang paraphernalia," and gang tattoos, or wears colors and flashes gang signs, he explained.

But in its response to the freedom of information request, the department said it couldn't find any official records detailing the standards. Sgt. Jordan Mazur told the groups that cops pass on the criteria verbally.

"Shea gave detailed response inquiries about the criteria yet when we asked for the criteria, we were told that the NYPD has no criteria," said Legal Defense Fund Assistant Counsel Marne Lenox.

"They can say orally that they have policies and procedures in place, but if they can't back up it with written procedures, it doesn't leave us much confidence in what Shea said under oath."

The suit describes the guidelines Shea laid out as "over-inclusive, racially discriminatory, and likely error-ridden."

The NYPD also has no way for people to challenge their inclusion in the database, the lawsuit claims.

Similar databases elsewhere have unfairly added people, the paperwork says. In California, a review of the statewide database found the name of 42 children 1 year or less in age, the suit alleges.

Chicago's database, meanwhile, had more than 160 people who are 70 years of age or older, plus two people listed as 132 years old, according the legal filing. In Portland, Ore., the documents say, authorities had to dismantle that city's gang database.

Keith Drew
349-18-04964
A.M.K.C. 18-18 Hazen St.
East Elmhurst, N.Y.
11370

SS

United States District Court
Southern District of New York
~~Attn~~: Pro Se Intake
500 Pearl Street
New York, N.Y. 10007

PRO SE OFFICE

USMP3
SDNY

Confidential
Legal Mail