UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------------------X
                                                          :

KEITH L. DREW,

                          Plaintiff,

                               18-CV-10557 (JMF)

             -v-

                               OPINION AND ORDER

THE CITY OF NEW YORK et al.,

                        Defendants.

---------------------------------------------------------------------X

JESSE M. FURMAN, United States District Judge:

      Plaintiff Keith Drew, proceeding without counsel, brings this action against the City of New York ("City") and members of the New York City Police Department ("NYPD"), pursuant to 42 U.S.C. § 1983, asserting claims for false arrest, malicious prosecution, fabrication of evidence, selective enforcement, conspiracy, and violations of his constitutional rights to equal protection and due process. Liberally construed, the Complaint also asserts common law tort claims. Defendants now move, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, to dismiss all claims. *See* ECF No. 33 ("Motion"). For the reasons that follow, their motion is GRANTED, and the Complaint is dismissed.

## BACKGROUND

      The following facts — drawn from the Complaint, ECF No. 2 ("Compl.") and documents that are attached to, integral to, or incorporated by reference in the Complaint — are assumed to be true for purposes of this motion, unless otherwise noted. *See DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010).

On June 30, 2018, Drew was at or near a subway station in Times Square when NYPD Officer Wilfred Martinez approached him in plainclothes. *See* Compl. ¶¶ 2, 30, 48. According to Drew, he was not engaging in unlawful activity; nevertheless, Office Martinez stopped, searched, and arrested him on charges of Unauthorized Sale of Farecard, a misdemeanor offense under New York Penal Law ("N.Y.P.L.") § 165.16(1). *Id.* ¶¶ 2, 30, 45. According to the arrest report,[1] Officer Martinez "observed" Drew, a "transit offender and a petit larceny recidivist," "approaching multiple passengers at the MVM machines and at the mezzanine, attempting to sell MetroCards for $5 and $20 . . . without permission or authority to do so." ECF No. 37-2 ("Arrest Report"), at 1. Officer Martinez also reported that he recovered ninety-five MetroCards from Drew, fourteen of which "were bent/altered at the magnetic strip." *Id.*

Because Drew's name appeared in the Transit Recidivist Database, a database of those involved in repeated transit-related offenses, Officer Martinez arrested Drew and, in addition to the misdemeanor offense, charged him with Criminal Possession of a Forged Instrument in the Second Degree, a felony under N.Y.P.L. § 170.25, and Loitering, a violation under N.Y.P.L. § 240.35(6). *See* Compl. ¶ 44; Arrest Report 1. After six hours in custody, Drew was arraigned on only the felony charge in the New York Supreme Court, Criminal Court, New York County. Compl. ¶ 4. On November 2, 2018, following a guilty plea, Drew was convicted of Criminal

---

[1] The Court takes judicial notice of the arrest report, but not for the truth of Officer Martinez's statements that he saw Drew offering transit cards for sale. *See, e.g., McNamee v. Clemens*, 762 F. Supp. 2d 584, 592 n.1 (E.D.N.Y. 2011) (noting that a court may take judicial notice of an indictment, but not for the truth of the allegations contained therein). The Court, however, takes full judicial notice of the certified criminal dispositions and indictment submitted by Defendants, *see* ECF Nos. 37-3, 37-4, 37-5, because they are part of the verifiable public record, *see Bentley v. Dennison*, 852 F. Supp. 2d 379, 382 n.5 (S.D.N.Y.2012), *aff'd sub nom. Betances v. Fischer*, 519 F. App'x 39 (2d Cir. 2013) (summary order).

Possession of a Forged Instrument in the Second Degree, *see* ECF No. 37-3, and on August 19, 2019, he was sentenced to a prison term of two to four years, *see* ECF No. 37-4.

Drew filed this action on November 13, 2018, but the case was stayed for the duration of his criminal proceedings. *See* ECF Nos. 1-3, 11-12. Despite his guilty plea, Drew denies that he was selling farecards on June 30, 2018, and asserts that he has never seen body camera footage of his arrest. Drew further maintains that Officer Martinez manipulated and forged the MetroCards in question, and avers that Assistant District Attorney Alissa Wimmer "refus[ed] to bring [charges for] misdemeanor unauthorized sale of certain transportation services" in order to "protect" Officer Martinez from false arrest allegations. Compl. ¶ 5. In light of these allegations, Drew brings claims under Section 1983 for false arrest, malicious prosecution, and selective enforcement based on race, and conspiracy. Drew also contends that he was "deprived of liberty on the basis of false evidence fabricated by the government," *id.* ¶¶ 21-22, and that his inclusion in the Transit Recidivist Database violates his rights, *id.* ¶¶ 25-27. Drew names as Defendants Officer Martinez; several former supervisory officials of the NYPD; and the City of New York. He seeks damages and removal of his name from the Transit Recidivist Database. *Id.* ¶ 27; *id.* at 25.

## LEGAL STANDARDS

In reviewing a motion to dismiss pursuant to Rule 12(b)(6), a court must accept the factual allegations set forth in the complaint as true and draw all reasonable inferences in favor of the plaintiff. *See, e.g.*, *Holmes v. Grubman*, 568 F.3d 329, 335 (2d Cir. 2009). To survive such a motion, a plaintiff must plead sufficient facts "to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference

3

that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). More specifically, the plaintiff must show "more than a sheer possibility that a defendant has acted unlawfully," *id.*, and cannot rely on mere "labels and conclusions" to support a claim, *Twombly*, 550 U.S. at 555. If the plaintiff's pleadings "have not nudged [his or her] claims across the line from conceivable to plausible, [the] complaint must be dismissed." *Id.* at 570.

Even under the heightened pleading standards set by *Iqbal* and *Twombly*, a court is "obligated to construe a *pro se* complaint liberally." *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009). Thus, when considering *pro se* submissions, the Court should interpret them "to raise the strongest arguments that they suggest." *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (per curiam) (internal quotation marks omitted). Nevertheless, "to survive a motion to dismiss, a *pro se* plaintiff must still plead sufficient facts to state a claim that is plausible on its face." *Bodley v. Clark*, No. 11-CV-8955 (KBF), 2012 WL 3042175, at *2 (S.D.N.Y. July 23, 2012); *see also, e.g.*, *Green v. McLaughlin*, 480 F. App'x 44, 46 (2d Cir. 2012) (summary order) ("*[P]ro se* complaints must contain sufficient factual allegations to meet the plausibility standard.").

## DISCUSSION

The Court will begin with Drew's Section 1983 claims against Officer Martinez, then turn to his claims relating to inclusion of his name in the Transit Recidivism Database, and end with his Section 1983 claims against the supervisory officers and the City.

### A. Section 1983 Claims Against Officer Martinez

Drew's Section 1983 claims against Officer Martinez require only brief attention. Under *Heck v. Humphrey*, 512 U.S. 477 (1994), when the success of a plaintiff's civil rights claim

4

would "necessarily imply the invalidity of his conviction or sentence," the plaintiff cannot proceed with the claim for damages unless the conviction or sentence has been invalidated. *Id.* at 487. Drew's conviction has not been invalidated, and — given the nature of his allegations — the success of his principal claims against Martinez, for false arrest, malicious prosecution, and fabrication of evidence, would necessarily imply the invalidity of his conviction or sentence. It follows that these claims must be and are dismissed. *See, e.g.*, *McDonough v. Smith*, 139 S. Ct. 2149 (2019) (holding that a plaintiff alleging fabrication of evidence must plead that his prosecution resulted in a favorable termination); *Lanning v. City of Glens Falls*, 908 F.3d 19, 22 (2d Cir. 2018) ("[A] plaintiff asserting a malicious prosecution claim under § 1983 must . . . show that the underlying criminal proceeding ended in a manner that affirmatively indicates his innocence."); *Covington v. City of New York*, 171 F.3d 117, 123 (2d Cir. 1999) ("[W]here the only evidence for conviction was obtained pursuant to an arrest, recovery in a civil case based on false arrest would necessarily impugn any conviction resulting from the use of that evidence." (emphasis omitted)); *see also, e.g.*, *Debellis v. Solomon*, No. 19-CV-8730 (JMF), 2020 WL 763656, *6 (Feb. 13, 2020).

Drew's remaining federal claims against Officer Martinez fare no better. He argues that N.Y. Penal Law § 165.16, the statute prohibiting the unauthorized sale of farecards, is unconstitutionally vague and that his activities involving farecards were therefore lawful. *See* ECF No. 41 ("Opp'n"), ¶¶ 10-14; Compl. ¶ 17. To the extent that this argument constitutes a freestanding claim at all, it may be barred by *Heck* as well. *See, e.g.*, *Castaneira v. Perdue*, No. 1:10-CV-3385 (TWT), 2010 WL 5115193, at *3 (N.D. Ga. Dec. 9, 2010) ("*Heck* bars a prisoner's challenge to the constitutionality of statutes under which he was convicted unless the conviction has been overturned or otherwise invalidated." (citing cases)). But regardless, it is

patently without merit. Drew also contends that Officer Martinez selectively enforced the laws based on race and conspired with ADA Wimmer to prosecute only the felony charge. But Drew's allegations do not come close to supporting these claims. Among other things, he fails to allege that Officer Martinez treated him differently from any similarly situated comparator or had a meeting of the minds with ADA Wimmer to deprive him of his constitutional rights. *See, e.g.*, *Miller v. Terrillion*, 391 F. Supp. 3d 217, 226 (E.D.N.Y. 2019) (dismissing a claim based on allegations similar to those here); *Gallop v. Cheney*, 642 F.3d 364, 369 (2d Cir. 2011) (holding that claims of conspiracy "containing only conclusory, vague, or general allegations of conspiracy to deprive a person of constitutional rights cannot withstand a motion to dismiss")). Accordingly, Drew's Section 1983 claims against Officer Martinez must be and are dismissed.

**B. Claims Relating to the Transit Recidivist Database**

Next, Drew challenges the inclusion of his name in the Transit Recidivist Database. Liberally construed, he alleges a claim for racial discrimination in violation of the Equal Protection Clause of the Fourteenth Amendment and a claim for violation of his right to due process. *See* Compl. ¶¶ 26, 28-29.[2] With respect to the former, it is well established that "[p]roof of racially discriminatory intent or purpose is required to show a violation of the Equal Protection Clause." *Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 265 (1977). To prevail a race discrimination claim, a plaintiff need not prove that the "challenged action rested *solely* on racially discriminatory purposes," *id.* (emphasis added), but he must plead

[2] Drew actually invokes the Thirteenth Amendment, which bars slavery and involuntary servitude. The Equal Protection Clause of the Fourteenth Amendment is more apt. *See Hayden v. Paterson*, 594 F.3d 150, 162 (2d Cir. 2010) ("The central purpose of the Equal Protection Clause of the Fourteenth Amendment is the prevention of official conduct discriminating on the basis of race." (internal quotation marks omitted) (quoting *Washington v. Davis*, 426 U.S. 229, 239 (1976))).

(and ultimately prove) that the defendants "selected or reaffirmed a particular course of action at least in part 'because of,' not merely 'in spite of,' its adverse effects upon an identifiable group," *Hayden*, 594 F.3d at 163 (quoting *Pers. Adm'r of Mass. v. Feeney*, 442 U.S. 256, 279 (1979)).

Drew's claim of racial discrimination here fails for at least two independent reasons. First, he fails to plead facts showing that the Transit Recidivist Database has a disparate impact on an identifiable group of which he is a member. Drew relies on a newspaper article attached to his Complaint that discusses an NYPD "gang database." Compl. ¶ 28 & Ex. 3. The article, however, is not about the Transit Recidivist Database, in which Drew's name is included, and thus does not support his claims. Second, and in any event, Drew fails to plead any facts suggesting that the racial composition of the Transit Recidivist Database, whatever it may be, is attributable to a discriminatory purpose or is due to "a clear pattern, unexplainable on grounds other than race." *Arlington Heights*, 429 U.S. at 266; *Hayden*, 594 F.3d at 162-63 ("Although disproportionate impact is not irrelevant, to violate the Fourteenth Amendment the disproportionate impact must be traced to a purpose to discriminate on the basis of race." (internal quotation marks, alterations, and citations omitted)). Drew argues generally that he has "been targeted by [the] government] by the use of st[i]gmatizing labels directed at a distinct and recognizable racial class in the effort to stimulate the economy through slave-like punitive sanctions." Compl. ¶ 36. Without more, however, such conclusory allegations are insufficient to state a plausible claim of racial discrimination.[3]

---

[3] Drew also alleges that Defendants included his name in the Transit Recidivist Database for a "non-violent larcenous offense while simultaneously failing to enter the infamous Bernhard Goetz," Opp'n ¶ 41, a white man who, in 1984, shot four young black men on the subway and was subsequently acquitted of all charges except for criminal possession of a weapon in the third degree, *see generally People v. Goetz*, 502 N.Y.S.2d 577 (N.Y. Sup. Ct. 1986), *aff'd*, 501 N.Y.S.2d 326 (N.Y. App. Div. 1986), *rev'd*, 497 N.E.2d 41 (N.Y. 1986). Drew and Goetz,

Nor does Drew state a plausible due process claim. Where a plaintiff sues "to enforce procedural due process rights, a court must determine (1) whether a [liberty or] property interest is implicated, and if it is, (2) what process is due before the plaintiff may be deprived of that interest." *Nnebe v. Daus*, 644 F.3d 147, 158 (2d Cir. 2011). "[T]he 'liberty' interest protected by the due process clause includes in certain circumstances the right to contest at a hearing in public, stigmatizing governmental accusations that impose a substantial disability." *O'Neill v. City of Auburn*, 23 F.3d 685, 691 (2d Cir. 1994) (quoting *Wisconsin v. Constantineau*, 400 U.S. 433, 437 (1971)). Some plaintiffs have invoked the "stigma-plus doctrine" to argue that they have a liberty interest in not being included in government databases. *See, e.g.*, *Valmonte v. Bane*, 18 F.3d 992, 999-1002 (2d Cir. 1994) (challenging plaintiff's inclusion on the Central Registry for child abusers); *Pedrote-Salinas v. Johnson*, No. 17-CV-5093 (JHL), 2018 WL 2320934, at \*5-6 (N.D. Ill. May 22, 2018) (analyzing challenge to plaintiff's inclusion in gang database under the stigma-plus doctrine). To establish a liberty interest under the stigma-plus doctrine, however, "a plaintiff must show (1) 'the utterance of a statement sufficiently derogatory to injure [the plaintiff's] reputation, that is capable of being proved false, and that [the plaintiff] claims is false,' and (2) 'a material state-imposed burden or state-imposed alteration of the plaintiff's status or rights.'" *Vega v. Lantz*, 596 F.3d 77, 81 (2d Cir. 2010) (quoting *Sadallah v. City of Utica*, 383 F.3d 34, 38 (2d Cir. 2004) (Sotomayor, J.)). "[T]he 'plus' imposed by the defendant must be a specific and adverse action clearly restricting the plaintiff's liberty — for example, the loss of employment . . . or the 'termination or alteration of

---

however, are not similarly situated. Nor does this allegation support Drew's claim of a racially discriminatory purpose for the Transit Recidivist Database.

some other legal right or status.'" *Velez v. Levy*, 401 F.3d 75, 87-88 (2d Cir. 2005) (quoting *Neu v. Corcoran*, 869 F.2d 662, 667 (2d Cir. 1989) (internal citations omitted)).

Being falsely labeled a recidivist may well qualify as stigmatizing insofar as it implies criminal conduct. *See, e.g., Alston v. City of Madison*, 853 F.3d 901, 909 (7th Cir. 2017) ("Without question, being classified as a 'repeat violent offender' harms one's reputation."). Here, however, Drew concedes that he has prior transit-related convictions. *See* Compl. ¶ 54 ("[A]ny and all criminal offenses where Plaintiff was duly adjudicated guilty have been fully atoned for as a matter of law, thus eliminating any adequate rationale for the N.Y.P.D. to include [him] in any type . . . of database."); Opp'n ¶ 50. Drew, therefore, has not alleged that he was *falsely* labeled a recidivist. It follows that Drew fails to allege that he had a liberty interest entitling him to notice or an opportunity to be heard before being included in the database. Accordingly, Drew's claims about his inclusion in the Transit Recidivist Database, whether for damages or injunctive relief, must be and are dismissed.

## C.  Claims Against the Supervisory Defendants and the City

Finally, Drew brings Section 1983 claims against the supervisory Defendants and the City. Under *Heck*, however, his conviction for criminal possession of a forged instrument likewise bars any claim that the City's policies caused Drew to suffer any Fourth Amendment violation. *See, e.g.*, *Lynch v. Suffolk Cnty. Police Dep't, Inc.*, 348 F. App'x 672, 675 (2d Cir. 2009) (summary order) ("Insofar as plaintiff alleges that a municipal policy caused [a constitutional violation] that led to his felony convictions, plaintiff's claim [against Suffolk County] seeks to recover damages for [an] allegedly unconstitutional conviction or imprisonment and is barred by *Heck*." (internal quotation marks omitted)). Moreover, in the circumstances of this case, because — as discussed above — Drew fails to plausibly allege *any* underlying

9

constitutional violation, his claims against Officer Martinez's supervisors and the City also fail as a matter of law.  *See Lanning*, 908 F.3d at 30 (dismissing *Monell* claims against a city and other municipal defendants upon the plaintiff's failure to plead the favorable termination of his prosecution or a plausible equal protection claim); *Crawford v. Van Buren Cty., Ark.*, 678 F.3d 666, 670 (8th Cir. 2012) (holding that *Heck* precludes a plaintiff from bringing claims under Section 1983 for municipal liability); *Jackson v. Cty. of Nassau*, No. 07-CV-245 (JFB) (AKT), 2010 WL 335581, at *9 (E.D.N.Y. Jan. 22, 2010) ("[B]ecause the Court finds as a matter of law . . . that *Heck v. Humphrey* prevents a finding that a constitutional violation was committed against plaintiff by any of the defendants . . . *,* no *Monell* claim can lie against the County of Nassau pursuant to § 1983."); *see also Blyden v. Mancusi*, 186 F.3d 252, 265 (2d Cir. 1999) ("Of course, for a supervisor to be liable under Section 1983, there must have been an underlying constitutional deprivation.").  Accordingly, these claims are also dismissed.

## CONCLUSION

For the reasons stated above, all of Drew's federal claims must be and are dismissed.  In light of that, the Court declines to exercise supplemental jurisdiction over his state-law claims to the extent that he pleads any.  Under 28 U.S.C. § 1367(a), a district court has discretion over whether to exercise supplemental jurisdiction over state-law claims "that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution."  The Supreme Court and the Second Circuit have made clear, however, that, as a general rule, "when the federal claims are dismissed the 'state claims should be dismissed as well.'"  *In re Merrill Lynch Ltd. P'ships Litig.*, 154 F.3d 56, 61 (2d Cir. 1998) (quoting *United Mine Workers v. Gibbs*, 383 U.S. 715, 726 (1966)); *accord Pension Benefit Guar. Corp. ex rel. St. Vincent Catholic Med. Ctrs. Ret. Plan v. Morgan Stanley*

*Inv. Mgmt. Inc.*, 712 F.3d 705, 727 (2d Cir. 2013).  Here, there is no basis to depart from that general rule.  Although Drew initially filed his claims in November 2018, the case is, as a legal matter, still at an early stage.  Thus, the traditional "values of judicial economy, convenience, fairness, and comity" that the Court must consider do not counsel in favor of exercising jurisdiction.  *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988).  Accordingly, Drew's state-law claims (to the extent he pleads any) are dismissed without prejudice to refiling in state court.  *See* 28 U.S.C. § 1367(c)(3); *see also, e.g.*, *United States ex rel. Borzilleri v. AbbVie, Inc.*, No. 15-CV-7881 (JMF), 2019 WL 3203000, at *3 (S.D.N.Y. July 16, 2019).

Additionally, the Court declines *sua sponte* to grant Drew leave to amend his Complaint.  Although leave to amend a pleading should be freely given "when justice so requires," Fed. R. Civ. P. 15(a)(2), and courts should generally grant *pro se* plaintiffs leave to amend "at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated," *Gomez v. USAA Fed. Sav. Bank*, 171 F.3d 794, 795 (2d Cir. 1999) (per curiam) (internal quotation marks omitted), it is "within the sound discretion of the district court to grant or deny leave to amend," *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 200 (2d Cir. 2007).  The Court already granted Drew leave to amend, and he has neither sought leave to amend again nor suggested that he possesses any additional facts that could cure the defects in his dismissed claims — most, if not all, of which are substantive and could not be cured.  *See, e.g.*, *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000); *Fischman v. Mitsubishi Chem. Holdings Am., Inc.*, No. 18-CV-8188 (JMF), 2019 WL 3034866, at *7 (S.D.N.Y. July 11, 2019) (declining to grant leave to amend as to certain claims in the absence of any suggestion that additional facts could remedy defects in the plaintiff's pleading).  Furthermore, Drew was on notice of Defendants' arguments when he filed his opposition to Defendants' motion to dismiss, and Drew was

expressly warned that he would "not be given any further opportunity" to amend the Complaint. *See* ECF Nos. 38, 40; *see also* Opp'n. In light of these circumstances, the Court will not *sua sponte* grant leave to amend. *See, e.g.*, *Overby v. Fabian*, No. 17-CV-3377 (CS), 2018 WL 3364392, at *14 (S.D.N.Y. July 10, 2018) ("Plaintiff's failure to fix deficiencies in his previous pleading, after being provided ample notice of them, is alone sufficient ground to deny leave to amend *sua sponte*.").

The Court certifies under 28 U.S.C. § 1915(a)(3) that any appeal from this order would not be taken in good faith, and therefore *in forma pauperis* status is denied for the purpose of an appeal. *See Coppedge v. United States*, 369 U.S. 438, 444-45 (1962).

The Clerk of Court is directed to terminate Docket No. 33, to close the case, and to mail a copy of this Opinion and Order to Drew at the address below.

SO ORDERED.

Dated: July 9, 2020
New York, New York

_____
JESSE M. FURMAN
United States District Judge

Mail to:   Keith L. Drew
           DIN #19A3129
           Mid−State Correctional Facility
           9005 Old River Rd.
           P.O. Box 2500
           Marcy, NY 13403

12